

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**1:26-cv-01453**
**Judge Sara L. Ellis**
**Magistrate Maria Valdez**
**RANDOM/Cat. 2**

KENNETH WILLIAM MAYLE,

Plaintiff,

v. Case No. _____

CHUBBY GOAT ACRES, a Michigan
nonprofit corporation; and
CHRISTEN KREUTZ, individually,

Defendants.

**RECEIVED**

FEB 09 2026 ꓘ✗ʍ

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW CLAIMS

Plaintiff Kenneth William Mayle, proceeding pro se, brings this action against Defendants Chubby Goat Acres and Christen Kreutz for deprivation of constitutional rights under 42 U.S.C. § 1983, and for common law claims of conversion, breach of bailment, and unjust enrichment, and respectfully alleges:

### PARTIES

1. Plaintiff Kenneth William Mayle is an adult resident of Cook County, Illinois, residing at 1034 N. Karlov Avenue, Chicago, Illinois 60651.

2. Defendant Chubby Goat Acres is a Michigan nonprofit corporation with its principal place of business at 10750 Paw Paw Drive, Schoolcraft, Michigan 49087.

3. Defendant Christen Kreutz is an individual residing in Schoolcraft, Michigan, and is the operator and controlling person of Chubby Goat Acres. She is sued in her individual capacity.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to:
a. 28 U.S.C. § 1331 (federal question jurisdiction) for Plaintiff's claim under 42 U.S.C. § 1983;
b. 28 U.S.C. § 1332 (diversity jurisdiction) because Plaintiff is a citizen of Illinois, Defendants are citizens of Michigan, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District, including:
a. Plaintiff resides in this District;
b. The threat of arrest under the void Michigan Order of Protection exists in this District;
c. Plaintiff's demand letter was sent from this District;

d. Plaintiff's constitutional rights are being violated in this District.

FACTUAL BACKGROUND

A. Plaintiff's Disability and Emotional Support Animal

6. Plaintiff has bipolar disorder, which is a recognized disability under the Americans with Disabilities Act.

7. Plaintiff uses an Emotional Support Animal to help manage his disability.

8. Plaintiff is the legal owner of a Guinea Hog pig named "Chief Wiggum."

9. Plaintiff acquired Chief Wiggum as a piglet in or around March 2016.

10. Chief Wiggum serves as Plaintiff's Emotional Support Animal and has been trained to provide therapeutic benefits, including massage therapy and emotional support during anxiety episodes related to Plaintiff's bipolar disorder.

11. The therapeutic bond between Chief Wiggum and Plaintiff has developed over approximately ten years.

B. The Boarding Agreement

12. In 2018, Plaintiff experienced temporary housing difficulties that prevented him from keeping Chief Wiggum in his residence.

13. In 2018, Plaintiff entered into an oral boarding agreement with Defendants to temporarily board Chief Wiggum at their animal sanctuary facility located at 10750 Paw Paw Drive, Schoolcraft, Michigan 49087.

14. Under the parties' agreement:
a. Plaintiff would provide financial support for Chief Wiggum's care;
b. Plaintiff retained full ownership of Chief Wiggum;
c. Plaintiff could visit Chief Wiggum for therapeutic purposes;
d. Plaintiff could reclaim Chief Wiggum at any time upon demand;
e. There was no time limit after which ownership would transfer to Defendants.

15. The distance between Plaintiff's residence in Chicago, Illinois and Defendants' facility in Schoolcraft, Michigan is approximately 175 miles.

16. At no time did Plaintiff execute any written surrender, adoption, or transfer of ownership paperwork for Chief Wiggum.

17. At no time did Plaintiff intend to abandon or permanently surrender Chief Wiggum.

C. Plaintiff's Financial Support and Regular Visits

18. From 2018 through approximately 2023 or 2024, Plaintiff provided substantial financial support for Chief Wiggum's care, totaling in excess of $40,000.

19. Many of Plaintiff's donations and payments were specifically earmarked for Chief Wiggum's care and welfare.

20. From 2018 through approximately 2023 or 2024, Plaintiff made regular monthly visits to Chief Wiggum for therapeutic purposes.

21. These visits were important to Plaintiff's mental health and management of his disability.

22. Plaintiff's regular financial support and visits demonstrate his continuous ownership of and responsibility for Chief Wiggum.

D. Breakdown of the Relationship

23. In or around 2023 or 2024, a dispute arose between Plaintiff and Defendants.

24. Following this dispute, Defendants banned Plaintiff from their property and told him he was not welcome.

25. Defendant Kreutz characterized Plaintiff as "mentally unwell" in communications, which refers to Plaintiff's disclosed disability (bipolar disorder).

26. Since being banned, Plaintiff has been unable to visit Chief Wiggum.

27. Defendants have not contacted Plaintiff regarding Chief Wiggum's welfare despite Plaintiff's years of regular monthly visits and substantial financial support.

E. Plaintiff's Demand for Return of His Property

28. On December 22, 2025, Plaintiff sent Defendants a formal written demand letter via certified mail requesting either immediate return of Chief Wiggum or execution of a written agreement acknowledging Plaintiff's ownership.

29. In his demand letter, Plaintiff offered flexible pickup arrangements, including roadside pickup or transfer to Pennsylvania or North Carolina, to accommodate the fact that he is banned from Defendants' property.

30. Plaintiff also notified Defendants that retention of Chief Wiggum after a specified date would constitute possession of stolen property.

31. Plaintiff sent this letter via certified mail, return receipt requested, to Defendants' address at 10750 Paw Paw Drive, Schoolcraft, Michigan 49087.

32. To date, Defendants have not responded to Plaintiff's demand letter.

33. Defendants have not returned Chief Wiggum to Plaintiff.

34. Defendants have intentionally ignored Plaintiff's demand in order to maintain wrongful possession of Plaintiff's property.

F. The Void Michigan Order of Protection

35. Rather than respond to Plaintiff's demand for return of his property, Defendant Kreutz filed for an Order of Protection against Plaintiff in Michigan state court.

36. Plaintiff was never personally served with any petition, complaint, summons, or notice regarding the Order of Protection proceedings.

37. Plaintiff never received any documents by personal service, mail, or any other method regarding the Order of Protection.

38. Because Plaintiff was not served, he did not know there was a hearing scheduled in Michigan court.

G. Plaintiff's Challenges to Lack of Service

39. As soon as Plaintiff learned of the Order of Protection proceedings, he sent written communications to the Michigan court challenging service.

40. Plaintiff sent at least two separate written mailings to the Michigan court clearly stating: "I was not served."

41. In these mailings, Plaintiff objected to the court's jurisdiction over him and requested that the proceedings be dismissed or that proper service be effected.

42. The Michigan court never responded to Plaintiff's challenges to service.

43. The Michigan court never contacted Plaintiff to arrange proper service.

44. To Plaintiff's knowledge, the Michigan court ignored his objections and proceeded with the Order of Protection case without jurisdiction over him.

H. The Missed Hearing and Circumstances Preventing Attendance

45. Upon information and belief, a hearing was scheduled in the Michigan Order of Protection case.

46. Plaintiff was unable to attend this hearing because:
a. He was never properly served with notice of the hearing;
b. The weather conditions made travel from Illinois to Michigan unsafe;
c. His vehicle's ignition cylinder had been vandalized, rendering his vehicle inoperable and preventing him from traveling to Michigan; and

d. The distance from his residence in Cook County, Illinois to Schoolcraft, Michigan is approximately 175 miles, making same-day travel difficult even under good conditions.

47. Plaintiff had no way to attend the hearing given these circumstances and the lack of proper notice.

I. The Order of Protection Is Void

48. Upon information and belief, the Michigan court entered an Order of Protection against Plaintiff despite his lack of proper service and his written objections.

49. This Order was entered without the court having personal jurisdiction over Plaintiff.

50. An order entered without personal jurisdiction is void from the beginning (void ab initio) and has no legal effect.

51. Plaintiff never had an opportunity to be heard in the Michigan proceedings because he was never properly served.

J. Defendants' Weaponization of the Void Order

52. Defendants know or should know that Plaintiff was never properly served with the Order of Protection.

53. Despite knowing the Order is void, Defendants continue to rely on it to prevent Plaintiff from reclaiming Chief Wiggum.

54. Defendants intentionally ignored Plaintiff's demand letter in order to set a trap: if Plaintiff attempts to reclaim his property, Defendants can claim he is "violating" the Order and have him arrested.

55. This is weaponization of the Order of Protection process to deprive Plaintiff of his constitutional property rights.

K. Imminent Threat of Arrest in Illinois

56. Plaintiff faces imminent threat of arrest based on the void Michigan Order of Protection.

57. Under the Full Faith and Credit Clause (U.S. Const. art. IV, § 1) and the Violence Against Women Act (18 U.S.C. § 2265), Illinois law enforcement agencies will enforce the Michigan Order of Protection as if it were an Illinois order.

58. Defendants may report Plaintiff to the Chicago Police Department or Cook County Sheriff's Office at any time, claiming he has "violated" the Order by:
a. Sending the demand letter;
b. Filing this lawsuit;
c. Attempting to contact them about Chief Wiggum; or

d. Any other communication related to his property.

59. If Defendants report an alleged "violation," Illinois law enforcement will arrest Plaintiff without examining whether the underlying Michigan Order is valid.

60. Arrest based on a void order would cause Plaintiff severe harm, including false imprisonment, a criminal record, inability to pursue his property rights, fear of exercising his First Amendment right to access courts, and trauma and exacerbation of his bipolar disorder.

L. Threat to Chief Wiggum

61. Defendants operate Chubby Goat Acres as an animal rescue and adoption facility.

62. Defendants regularly adopt animals out to third parties.

63. Upon information and belief, Defendants may adopt Chief Wiggum out to a third party at any time.

64. If Chief Wiggum is adopted to a third party, Plaintiff may never be able to recover him.

65. Loss of Chief Wiggum would cause Plaintiff irreparable harm because he is Plaintiff's Emotional Support Animal, they have a ten-year therapeutic bond that cannot be replaced, and loss of his ESA would severely exacerbate Plaintiff's bipolar disorder.

COUNT I
42 U.S.C. § 1983 – DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS
(Against Defendant Christen Kreutz, Individual Capacity)

66. Plaintiff incorporates by reference all preceding paragraphs.

67. Defendant Kreutz acted under color of state law by invoking and weaponizing the Michigan state court Order of Protection process.

68. Defendant Kreutz knew or should have known that Plaintiff was never properly served with the Order of Protection proceedings.

69. Defendant Kreutz knew or should have known that the Michigan court lacked personal jurisdiction over Plaintiff.

70. Defendant Kreutz knew or should have known that the Order of Protection entered without proper service is void.

71. Despite this knowledge, Defendant Kreutz obtained and continues to rely on the void Order to deprive Plaintiff of his property (Chief Wiggum) without due process of law.

72. Defendant Kreutz uses the void Order as a shield to prevent Plaintiff from reclaiming his property and as a sword to threaten him with arrest if he attempts to do so.

73. This deprivation of property without due process violates Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

74. Defendant Kreutz's actions were willful, intentional, and in reckless disregard of Plaintiff's constitutional rights.

75. As a direct and proximate result of Defendant Kreutz's violation of Plaintiff's constitutional rights, Plaintiff has suffered and continues to suffer damages, including:
a. Deprivation of his property (Chief Wiggum);
b. Loss of his Emotional Support Animal;
c. Exacerbation of his bipolar disorder;
d. Fear of arrest and criminal prosecution;
e. Inability to exercise his property rights;
f. Emotional distress and mental anguish.

76. Defendant Kreutz's conduct was malicious and in reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

COUNT II
CONVERSION
(Against All Defendants)

77. Plaintiff incorporates by reference all preceding paragraphs.

78. Plaintiff is the legal owner of Chief Wiggum and has superior right to possession.

79. Defendants have wrongfully exercised dominion and control over Chief Wiggum in a manner inconsistent with Plaintiff's ownership rights.

80. Defendants have refused to return Chief Wiggum despite Plaintiff's lawful demand on December 22, 2025.

81. Defendants continue to wrongfully possess Chief Wiggum.

82. Defendants' conversion of Chief Wiggum was intentional and without Plaintiff's consent.

83. As a direct and proximate result of Defendants' conversion, Plaintiff has suffered damages including:
a. Loss of possession of his property;
b. Loss of his Emotional Support Animal;
c. Exacerbation of his bipolar disorder;
d. Loss of the therapeutic benefits Chief Wiggum provides;
e. Emotional distress.

COUNT III
BREACH OF BAILMENT

(Against All Defendants)

84. Plaintiff incorporates by reference all preceding paragraphs.

85. In 2018, Plaintiff delivered Chief Wiggum to Defendants for the limited purpose of temporary boarding.

86. This delivery created a bailment relationship, with Plaintiff as bailor and Defendants as bailees.

87. Under the bailment agreement, Defendants had a duty to:
a. Care for Chief Wiggum;
b. Return Chief Wiggum to Plaintiff upon demand;
c. Not convert Chief Wiggum to their own use;
d. Not claim ownership of Chief Wiggum.

88. Defendants breached the bailment agreement by:
a. Refusing to return Chief Wiggum upon Plaintiff's demand on December 22, 2025;
b. Claiming ownership or superior possessory rights to Chief Wiggum;
c. Using the void Order of Protection to prevent Plaintiff from reclaiming his property;
d. Threatening Plaintiff with arrest if he attempts to reclaim Chief Wiggum.

89. As a direct and proximate result of Defendants' breach of bailment, Plaintiff has suffered damages as described above.

COUNT IV
UNJUST ENRICHMENT
(Against All Defendants)

90. Plaintiff incorporates by reference all preceding paragraphs.

91. Plaintiff conferred a benefit on Defendants by:
a. Providing over $40,000 in financial support for Chief Wiggum's care from 2018 through 2023 or 2024;
b. Paying for or contributing to improvements to Defendants' facility;
c. Providing a valuable animal (Chief Wiggum) that Defendants can use for their nonprofit purposes or adopt out for a fee.

92. Defendants had knowledge of and appreciated this benefit.

93. Defendants accepted and retained this benefit.

94. Under the circumstances, it would be inequitable for Defendants to retain this benefit without compensating Plaintiff, particularly where:
a. Defendants refuse to return Plaintiff's property;
b. Defendants weaponized the court system to deprive Plaintiff of his property;

c. Defendants have unjustly enriched themselves at Plaintiff's expense.

95. Defendants should be required to make restitution to Plaintiff in an amount to be determined at trial, including the value of Chief Wiggum and the financial support Plaintiff provided.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kenneth William Mayle respectfully requests that this Court:

1. Assume jurisdiction over this action;

2. Issue a Temporary Restraining Order and Preliminary Injunction:
a. Prohibiting Defendants from adopting out, selling, transferring, or otherwise disposing of Chief Wiggum;
b. Prohibiting Defendants from reporting Plaintiff to any law enforcement agency for alleged violations of the Michigan Order of Protection;
c. Ordering Defendants to arrange for immediate transfer of Chief Wiggum to Plaintiff or Plaintiff's designated agent at a neutral location;

3. Enter judgment in favor of Plaintiff and against Defendants on all counts;

4. Award Plaintiff compensatory damages in an amount to be determined at trial, including:
a. The value of Chief Wiggum;
b. The financial support Plaintiff provided to Defendants (over $40,000);
c. Damages for loss of his Emotional Support Animal;
d. Damages for exacerbation of his disability;
e. Emotional distress damages;

5. Award Plaintiff punitive damages against Defendant Kreutz for her willful and malicious violation of Plaintiff's constitutional rights;

6. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

7. Grant such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: February 7, 2026

_____

Kenneth William Mayle

1034 N. Karlov Avenue
Chicago, Illinois 60651
248-635-7455
ken.mayle@gmail.com
Pro Se Plaintiff

EXHIBITS

Kenneth William Mayle v. Chubby Goat Acres et al.

United States District Court – Northern District of Illinois

Exhibit A – Demand Letter (clean)

Exhibit B – USPS Certified Mail Receipt (Demand Letter)

Exhibit C – USPS Certified Mail Receipt (Court / Service Objection)

Exhibit D – Motion to Quash (clean)

Kenneth William Mayle
1034 N. Karlov Ave
Chicago, IL 60651
Phone: 2486357455
Email: ken.mayle@gmail.com

December 22, 2025

VIA CERTIFIED MAIL & EMAIL

Chubby Goat Acres LLC
Attn: Board of Directors, in official capacity
10750 Paw Paw Lake Dr
Schoolcraft, MI 49087

Christen Kreutz, in official and personal capacity
10750 Paw Paw Lake Dr
Schoolcraft, MI 49087

David Kreutz, in official capacity
10750 Paw Paw Lake Dr
Schoolcraft, MI 49087

Jeanne Carter, in official capacity
10750 Paw Paw Lake Dr
Schoolcraft, MI 49087

Re: Immediate Surrender and Return of Wiggum (a/k/a Boarphomet /
Chief Wiggum)

To the Board of Directors of Chubby Goat Acres LLC, and to the
abovenamed individuals:

Wiggums Ownership, ESA Status, Persona, and Placement

1. Wiggum is and has always been the personal property of the
undersigned, Kenneth William Mayle. At no time has Wiggum ever been
sold, gifted, surrendered, or lawfully transferred to Chubby Goat
Acres LLC, its Board of Directors, or any individual associated with
it.
2. Wiggum is also legally recognized and maintained as an emotional
support animal (ESA) for Mayle under applicable federal housing and
disability laws, and that status has never been revoked,
surrendered, or lawfully transferred. His continued separation from
Mayle therefore interferes not only with property rights but also
with Mayles federally protected ESArelated interests.
3. Wiggum was accepted by Chubby Goat Acres LLC only as a resident
animal under a limited, revocable placement arrangement, with the
clear understanding that ownership remained with Mayle and that
Mayle could demand Wiggums return at any time. No document exists
that lawfully transfers title, and any suggestion to the contrary is
false.
4. Over time, Mayle has developed and invested in Wiggums unique
persona, character, and identity (including the names Boarphomet

and Chief Wiggum, associated imagery, goodwill, and related creative and commercial concepts). The combined value of Wiggum as a living animal together with this developed persona and associated identity far exceeds twenty thousand dollars ($20,000).

5. Federal litigation relating in part to Wiggum and associated property and rights is currently pending, and your continued refusal to return Wiggum after this clear written demand will be documented and may be presented as evidence of ongoing wrongful retention and potential bad faith in that proceeding.

6. Mayle has demanded Wiggums return and continues to do so through this letter. Your continued possession or control of Wiggum after receipt of this notice is without consent, inconsistent with the limited placement arrangement, and constitutes wrongful retention of property.

Michigan Statutory Notice Receiving / Retaining Stolen Property

7. Under Michigan law, a person who buys, receives, possesses, conceals, or aids in concealing stolen, embezzled, or converted property, knowing or having reason to know that the property is stolen, may be guilty of a felony or misdemeanor depending on the value of the property, including at higher felony levels where the value exceeds $20,000 (MCL 750.535).

8. As of the date of this letter, the Board of Directors of Chubby Goat Acres LLC and the abovenamed individuals are on formal written notice that:

a. Wiggum is claimed as the lawful property of Kenneth William Mayle;

b. Wiggum was never surrendered or transferred to you; and

c. In light of the value of Wiggum and his developed persona, continued possession, concealment, or refusal to return Wiggum after this written demand may constitute receiving and retaining stolen property under MCL 750.535 and related Michigan law.

9. Michigan livestock and animal statutes, including provisions such as MCL 433.58, recognize that statutory procedures relating to animals do not deprive the owner of the right to bring civil actions such as replevin or other appropriate remedies to recover an animal wrongfully withheld. Wiggum is not an animal running at large, but is confined in your custody without the owners consent.

Demand for Surrender and Return

10. You are hereby formally directed to surrender and return Wiggum to Mayle within five (5) business days of your receipt of this letter.

11. Wiggum shall be returned in good health, along with any records, tags, microchip information, veterinary records, photographs, and registration or intake documents in your possession.

12. Delivery shall be made at your curb or at another neutral, safe location in Kalamazoo County, Michigan, as mutually agreed in writing (such as a police station or veterinary clinic). Mayle is willing to coordinate reasonable logistics for transport, provided that such coordination does not waive any rights.

13. If you believe you possess any legal claim of ownership in Wiggum,

Exhibit A – Page 2 of 3

you are directed to provide copies of any written documentation
(contracts, bills of sale, surrender forms, adoption agreements, or
other instruments) that you contend support such a claim, within the
same five (5) businessday period. Failure to produce such
documentation will be treated as confirmation that no valid transfer
of ownership exists.

Consequences of NonCompliance

14. If Wiggum is not surrendered within five (5) business days of your
receipt of this letter, Mayle will proceed to pursue all available
civil and, where appropriate, criminal remedies without further
notice, including but not limited to:
a. an action for replevin or claim and delivery;
b. claims for conversion and related damages;
c. reporting and referral to appropriate lawenforcement agencies
for potential violations of MCL 750.535 and any other applicable
statutes; and
d. recovery of fees, costs, and damages associated with the wrongful
retention and concealment of property, including the loss and
exploitation of Wiggums developed persona, ESA status, and
associated value.
15. Nothing in this letter shall be construed as a waiver of any rights,
claims, or remedies available to Mayle in any forum, including the
currently pending federal litigation, all of which are expressly
reserved.

Please respond in writing to confirm the time, date, and exact location
(curbside or other mutually agreed location) for Wiggums return within
the deadline stated above.

Sincerely,

Kenneth William Mayle

1034 N. Karlov Ave

Chicago, IL 60651

248-635-7455

ken.mayle@gmail.com

Exhibit A – Page 3 of 3

ALERT: SEVERE WEATHER CONDITIONS ACROSS THE U.S. MAY DELAY PROCESSING, TRANS...

# USPS Tracking®

FAQs >

**Tracking Number:**

**Remove ✕**

## 9589071052702272377962

Copy        Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item could not be delivered on January 16, 2026 at 7:52 am in SCHOOLCRAFT, MI 49087. It was held for the required number of days and is being returned to the sender.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

**Alert**
**Unclaimed/Being Returned to Sender**
SCHOOLCRAFT, MI 49087
January 16, 2026, 7:52 am

**Reminder to Schedule Redelivery of your item**
January 4, 2026

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?** (https://faq.usps.com/s/article/Where-is-my-package)

| Text & Email Updates | ⌄ |
|---|---|

| USPS Tracking Plus® | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

Feedback

Exhibit B – Page 1 of 2

**See Less** ∧

Track Another Package

┌─────────────────────────────────────────────────────────────────────┐
│ Enter tracking or barcode numbers                                     │
└─────────────────────────────────────────────────────────────────────┘

# Need More Help?

Contact USPS Tracking support for further assistance.

┌─────────────────────────┐
│          **FAQs**         │
└─────────────────────────┘

Exhibit B – Page 2 of 2

ALERT: SEVERE WEATHER CONDITIONS ACROSS THE U.S. MAY DELAY PROCESSING, TRANS…

# USPS Tracking®

FAQs ›

**Tracking Number:**                                                    Remove ✕

## 9589071052702272377979

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to an individual at the address at 11:46 am on December 29, 2025 in KALAMAZOO, MI 49007.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

## Delivered
**Delivered, Left with Individual**
KALAMAZOO, MI 49007
December 29, 2025, 11:46 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

| Text & Email Updates | ⌄ |
|---|---|

| USPS Tracking Plus® | ⌄ |
|---|---|

| Product Information | ⌄ |
|---|---|

**See Less ⌃**

Track Another Package

Exhibit C – Page 1 of 2

Feedback

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs

Exhibit C – Page 2 of 2