Ⅎc



**FILED**

FEB 09 2026 JXM

**THOMAS G. BRUTON**
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH WILLIAM MAYLE,

Plaintiff,

v. Case No. _____

1:26-cv-01453
Judge Sara L. Ellis
Magistrate Maria Valdez
RANDOM/Cat. 2

CHUBBY GOAT ACRES, a Michigan
nonprofit corporation; and
CHRISTEN KREUTZ, individually,

Defendants.

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Kenneth William Mayle, proceeding pro se, respectfully moves this Court pursuant to
Federal Rule of Civil Procedure 65(b) for entry of a Temporary Restraining Order against
Defendants, and in support states:

## INTRODUCTION

This is an emergency motion to prevent two imminent harms: (1) Plaintiff's arrest in Illinois
based on a void Michigan Order of Protection, and (2) Defendants' adoption of Plaintiff's
Emotional Support Animal to a third party, making recovery impossible. Both harms could
occur at any moment. This Court's immediate intervention is required to protect Plaintiff's
constitutional rights and property.

## FACTUAL BACKGROUND

### A. The Parties and Property at Issue

1. Plaintiff is a resident of Cook County, Illinois with bipolar disorder, a recognized disability
under the Americans with Disabilities Act.

2. Plaintiff is the legal owner of a Guinea Hog pig named "Chief Wiggum," which serves as his
Emotional Support Animal and has been trained to provide therapeutic benefits for his
disability.

3. Plaintiff acquired Chief Wiggum in March 2016 and has maintained a therapeutic bond with
him for approximately ten years.

4. Defendant Chubby Goat Acres is a Michigan nonprofit animal rescue organization located
in Schoolcraft, Michigan, approximately 175 miles from Plaintiff's residence.

5. Defendant Christen Kreutz is the operator and controlling person of Chubby Goat Acres.

B. The Boarding Agreement and Plaintiff's Ownership

6. In 2018, Plaintiff entered into an oral boarding agreement with Defendants to temporarily board Chief Wiggum at their facility.

7. Under this agreement, Plaintiff retained full ownership of Chief Wiggum and could reclaim him at any time.

8. From 2018 through 2023 or 2024, Plaintiff provided over $40,000 in financial support for Chief Wiggum's care and made regular monthly visits for therapeutic purposes.

9. Plaintiff never executed any written surrender or transfer of ownership.

10. In 2023 or 2024, a dispute arose and Defendants banned Plaintiff from their property.

C. Plaintiff's Demand for Return of His Property

11. On December 22, 2025, Plaintiff sent Defendants a formal demand letter via certified mail requesting immediate return of Chief Wiggum.

12. Plaintiff offered flexible pickup arrangements, including roadside pickup or transfer to Pennsylvania or North Carolina.

13. Defendants have not responded and have not returned Chief Wiggum.

D. The Void Michigan Order of Protection

14. Rather than return Plaintiff's property, Defendant Kreutz filed for an Order of Protection against Plaintiff in Michigan state court.

15. **Plaintiff was never personally served with any petition, complaint, summons, or notice regarding the Order of Protection proceedings.**

16. As soon as Plaintiff learned of the proceedings, he sent at least two written mailings to the Michigan court clearly stating: "I was not served."

17. The Michigan court never responded to Plaintiff's challenges and, upon information and belief, entered an Order of Protection without jurisdiction.

18. An order entered without personal jurisdiction is void ab initio and has no legal effect.

19. Plaintiff was unable to attend any hearing because he was never served, and additionally because severe weather and vehicle vandalism (damaged ignition cylinder) prevented travel.

E. Imminent Threat of Arrest in Illinois

20. Under the Full Faith and Credit Clause and the Violence Against Women Act, Illinois law enforcement will enforce the Michigan Order of Protection as if it were an Illinois order.

21. Defendants may report Plaintiff to the Chicago Police Department or Cook County Sheriff's Office at any time, claiming he "violated" the Order by sending the demand letter, filing this lawsuit, or any other communication.

22. If Defendants report an alleged violation, Illinois law enforcement will arrest Plaintiff without examining whether the underlying Michigan Order is valid.

23. **Plaintiff could be arrested today, tomorrow, or at any moment.**

F. Imminent Threat to Chief Wiggum

24. Defendants operate Chubby Goat Acres as an animal rescue and adoption facility and regularly adopt animals out to third parties.

25. Defendants may adopt Chief Wiggum out to a third party at any time.

26. If Chief Wiggum is adopted to a third party in another state, Plaintiff may never be able to recover him.

LEGAL STANDARD

Under Federal Rule of Civil Procedure 65(b), a court may issue a temporary restraining order without written or oral notice to the adverse party if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The Court considers four factors: (1) likelihood of success on the merits; (2) irreparable harm; (3) balance of harms; and (4) public interest.

ARGUMENT

I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

A. 42 U.S.C. § 1983 Claim – Deprivation of Property Without Due Process

Plaintiff is likely to succeed on his claim that Defendant Kreutz violated his Fourteenth Amendment right to due process by weaponizing a void Order of Protection to deprive him of his property.

1. **Property Interest**: Plaintiff has a clear property interest in Chief Wiggum. He acquired Chief Wiggum in 2016, provided over $40,000 for his care, made regular monthly visits, and never surrendered ownership.

2. **State Action**: Defendant Kreutz acted under color of state law by invoking the Michigan court system to obtain an Order of Protection and using that Order to deprive Plaintiff of his property.

3. **Lack of Due Process**: Plaintiff was never served with notice of the Order of Protection proceedings. He sent two written challenges to the Michigan court stating "I was not served." The Michigan court ignored his objections and proceeded without jurisdiction. An order entered without personal jurisdiction is void. *Pennoyer v. Neff*, 95 U.S. 714 (1878).

4. **Weaponization**: Defendant Kreutz knew or should have known that Plaintiff was not served. Despite this, she relies on the void Order to prevent Plaintiff from reclaiming his property and to threaten him with arrest if he attempts to do so. This is a paradigmatic deprivation of property without due process.

B. Conversion and Breach of Bailment Claims

Plaintiff is likely to succeed on his state law claims:

1. **Conversion**: Plaintiff owns Chief Wiggum. Defendants refuse to return him despite lawful demand. This is conversion.

2. **Breach of Bailment**: The 2018 boarding agreement created a bailment. Defendants breached their duty to return Chief Wiggum upon demand.

II. PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT A TRO

Plaintiff faces two forms of imminent irreparable harm:

A. Arrest Based on Void Order

1. Defendants may report Plaintiff to Illinois law enforcement at any moment, claiming he "violated" the Michigan Order.

2. Illinois police will arrest Plaintiff without examining the validity of the underlying Order.

3. Arrest would cause: false imprisonment, criminal record, inability to pursue property rights, trauma, and exacerbation of Plaintiff's bipolar disorder.

4. **This harm is imminent**—it could occur today or tomorrow.

5. Money damages cannot compensate for false arrest and constitutional violations. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

## B. Loss of Chief Wiggum

1. Defendants may adopt Chief Wiggum out to a third party at any moment.

2. If adopted out, Chief Wiggum may be moved to another state, making recovery impossible.

3. Chief Wiggum is Plaintiff's Emotional Support Animal. They have a ten-year therapeutic bond. Loss of this ESA would severely exacerbate Plaintiff's disability.

4. No amount of money can replace this relationship.

## III. THE BALANCE OF HARMS FAVORS PLAINTIFF

The requested TRO would:
- Prohibit Defendants from adopting out Chief Wiggum (minimal burden—simply maintain status quo);
- Prohibit Defendants from reporting Plaintiff to law enforcement for alleged violations of a void Order (no legitimate interest in enforcing a void Order);
- Require Defendants to arrange transfer of Chief Wiggum at a neutral location (minimal burden—Plaintiff offers roadside pickup).

These modest burdens are vastly outweighed by the irreparable harms Plaintiff faces: arrest, loss of his ESA, and exacerbation of his disability.

## IV. THE PUBLIC INTEREST FAVORS A TRO

The public has a strong interest in:
- Preventing arrests based on void court orders;
- Protecting disabled individuals' access to Emotional Support Animals;
- Ensuring due process and proper service in court proceedings;
- Preventing weaponization of protective orders to deprive individuals of property rights.

All of these interests favor granting the TRO.

## V. WHY NOTICE SHOULD NOT BE REQUIRED

Plaintiff respectfully requests that the Court issue this TRO without prior notice to Defendants pursuant to Rule 65(b)(1) because providing advance notice would result in immediate and irreparable harm:

1. **Adoption Risk**: If Defendants receive notice before the TRO is issued, they may immediately adopt Chief Wiggum out to a third party to frustrate this Court's jurisdiction and make recovery impossible.

2. **Arrest Risk**: If Defendants receive notice, they may immediately report Plaintiff to Illinois law enforcement for alleged "violations," causing his arrest before this Court can rule.

3. **Evidence Destruction**: Defendants may destroy or conceal records of Plaintiff's payments and the boarding agreement.

4. **Minimal Prejudice**: Defendants will have full opportunity to be heard at the preliminary injunction hearing, which must be scheduled within 14 days under Rule 65(b)(2).

The harm that will occur if Defendants receive advance notice vastly outweighs any prejudice from proceeding without notice.

PROPOSED TRO PROVISIONS

Plaintiff requests that the Court enter a Temporary Restraining Order:

1. **Prohibiting Defendants from:**
a. Adopting out, selling, transferring, or otherwise disposing of Chief Wiggum to any third party;
b. Reporting Plaintiff Kenneth William Mayle to any law enforcement agency (including Chicago Police Department, Cook County Sheriff's Office, or any Illinois or Michigan agency) for alleged violations of the Michigan Order of Protection related to this lawsuit, the demand letter, or any communication regarding Chief Wiggum;
c. Taking any action in retaliation against Chief Wiggum;

2. **Requiring Defendants to:**
a. Arrange for transfer of Chief Wiggum to Plaintiff or Plaintiff's designated agent within 72 hours of entry of this Order;
b. Transfer to occur at a neutral location (roadside pickup, Pennsylvania, North Carolina, or other mutually agreeable location) to accommodate the fact that Plaintiff is banned from Defendants' property;
c. Provide Chief Wiggum with adequate food, water, shelter, and veterinary care until transfer is completed;

3. **Effective Period:** This TRO shall remain in effect for 14 days or until a hearing on a preliminary injunction, whichever occurs first;

4. **Bond:** Plaintiff requests that no bond be required, as he proceeds in forma pauperis and Defendants will suffer no damages from this Order (they have no legitimate property interest in Chief Wiggum and no legitimate interest in enforcing a void Order);

5. **Preliminary Injunction Hearing:** Plaintiff requests that the Court schedule a hearing on a preliminary injunction within 14 days as required by Rule 65(b)(2).

CONCLUSION

Plaintiff faces imminent irreparable harm: arrest based on a void Order of Protection, and loss of his Emotional Support Animal. This Court's immediate intervention is necessary to protect

Plaintiff's constitutional rights and property. Plaintiff is likely to succeed on the merits of his claims. The balance of harms and public interest strongly favor granting emergency relief.

WHEREFORE, Plaintiff Kenneth William Mayle respectfully requests that this Court:

1. Issue a Temporary Restraining Order in the form proposed above;
2. Schedule a preliminary injunction hearing within 14 days;
3. Require no bond or minimal bond;
4. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: February 7, 2026

_____

Kenneth William Mayle
1034 N. Karlov Avenue
Chicago, Illinois 60651
248-635-7455
ken.mayle@gmail.com
Pro Se Plaintiff