UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH WILLIAM MAYLE,

Plaintiff,

v. Case No. _____

CHUBBY GOAT ACRES, a Michigan nonprofit corporation; and
CHRISTEN KREUTZ, individually,

Defendants.

**FILED**

FEB 09 2026 JXM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1:26-cv-01453
Judge Sara L. Ellis
Magistrate Maria Valdez
RANDOM/Cat. 2

AFFIDAVIT OF KENNETH WILLIAM MAYLE
IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

I, Kenneth William Mayle, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge, information, and belief:

PERSONAL BACKGROUND

1. I am the Plaintiff in this action and make this affidavit based on my personal knowledge.

2. I am an adult resident of Cook County, Illinois, currently residing at 1034 N. Karlov Avenue, Chicago, Illinois 60651.

3. I have bipolar disorder, which is a recognized disability under the Americans with Disabilities Act.

4. I use an Emotional Support Animal to help manage my disability.

OWNERSHIP OF CHIEF WIGGUM

5. I am the legal owner of a Guinea Hog pig named "Chief Wiggum."

6. I acquired Chief Wiggum as a piglet in or around March 2016.

7. Chief Wiggum serves as my Emotional Support Animal and has been trained to provide therapeutic benefits, including massage therapy and emotional support during anxiety episodes related to my bipolar disorder.

8. The therapeutic bond between Chief Wiggum and me has developed over approximately ten years.

THE BOARDING AGREEMENT

9. In 2018, I experienced temporary housing difficulties that prevented me from keeping Chief Wiggum in my residence.

10. In 2018, I entered into an oral boarding agreement with Defendants Chubby Goat Acres and Christen Kreutz to temporarily board Chief Wiggum at their animal sanctuary facility located at 10750 Paw Paw Drive, Schoolcraft, Michigan 49087.

11. Under our agreement:
- I would provide financial support for Chief Wiggum's care;
- I retained full ownership of Chief Wiggum;
- I could visit Chief Wiggum for therapeutic purposes;
- I could reclaim Chief Wiggum at any time upon my demand;
- There was no time limit after which ownership would transfer to Defendants.

12. At no time did I execute any written surrender, adoption, or transfer of ownership paperwork for Chief Wiggum.

13. At no time did I intend to abandon or permanently surrender Chief Wiggum.

FINANCIAL SUPPORT AND VISITS

14. From 2018 through approximately 2023 or 2024, I provided substantial financial support for Chief Wiggum's care, totaling in excess of $40,000.

15. Many of my donations and payments were specifically earmarked for Chief Wiggum's care and welfare.

16. From 2018 through approximately 2023 or 2024, I made regular monthly visits to Chief Wiggum for therapeutic purposes.

17. These visits were important to my mental health and management of my disability.

18. My regular financial support and visits demonstrate my continuous ownership of and responsibility for Chief Wiggum.

BREAKDOWN OF THE RELATIONSHIP

19. In or around 2023 or 2024, a dispute arose between me and Defendants.

20. Following this dispute, Defendants banned me from their property and told me I was not welcome.

21. Defendant Kreutz characterized me as "mentally unwell" in communications, which I believe refers to my disclosed disability (bipolar disorder).

22. Since being banned, I have been unable to visit Chief Wiggum.

23. Defendants have not contacted me regarding Chief Wiggum's welfare despite my years of regular monthly visits.

MY DEMAND FOR RETURN OF CHIEF WIGGUM

24. On December 22, 2025, I sent Defendants a formal written demand letter via certified mail requesting either immediate return of Chief Wiggum or execution of a written agreement acknowledging my ownership.

25. In my demand letter, I offered flexible pickup arrangements, including roadside pickup or transfer to Pennsylvania or North Carolina, to accommodate the fact that I am banned from Defendants' property.

26. I also notified Defendants that retention of Chief Wiggum after a specified date would constitute possession of stolen property.

27. I sent this letter via certified mail, return receipt requested, to Defendants' address at 10750 Paw Paw Drive, Schoolcraft, Michigan 49087.

28. Attached as Exhibit A is a true and correct copy of my demand letter.

29. Attached as Exhibit B is the certified mail receipt and/or tracking information.

30. To date, Defendants have not responded to my demand letter.

31. Defendants have not returned Chief Wiggum to me.

32. Defendants have intentionally ignored my demand in order to maintain possession of my property.

THE MICHIGAN ORDER OF PROTECTION

33. Rather than respond to my demand for return of my property, Defendant Kreutz filed for an Order of Protection against me in Michigan state court.

34. I was never personally served with any petition, complaint, summons, or notice regarding the Order of Protection proceedings.

35. I never received any documents by personal service, mail, or any other method regarding the Order of Protection.

36. The first I learned of the Order of Protection was through communication from Defendants or their representatives.

37. Because I was not served, I did not know there was a hearing scheduled in Michigan court.

MY CHALLENGES TO LACK OF SERVICE

38. As soon as I learned of the Order of Protection proceedings, I sent written communications to the Michigan court challenging service.

39. I sent at least two separate written mailings to the Michigan court clearly stating: "I was not served."

40. In these mailings, I objected to the court's jurisdiction over me and requested that the proceedings be dismissed or that proper service be effected.

41. Attached as Exhibit C are true and correct copies of the mailings I sent to the Michigan court challenging service.

42. Attached as Exhibit D are the certified mail receipts and/or tracking information showing the Michigan court received my mailings.

43. The Michigan court never responded to my challenges to service.

44. The Michigan court never contacted me to arrange proper service.

45. To my knowledge, the Michigan court ignored my objections and proceeded with the Order of Protection case without jurisdiction over me.

THE MISSED HEARING

46. Upon information and belief, a hearing was scheduled in the Michigan Order of Protection case.

47. I was unable to attend this hearing because:
a. I was never properly served with notice of the hearing;
b. The weather conditions made travel from Illinois to Michigan unsafe;
c. My vehicle's ignition cylinder had been vandalized, rendering my vehicle inoperable and preventing me from traveling to Michigan; and
d. The distance from my residence in Cook County, Illinois to Schoolcraft, Michigan is approximately 175 miles, making same-day travel difficult even under good conditions.

48. Attached as Exhibit E is evidence of weather conditions preventing travel.

49. Attached as Exhibit F is evidence of vehicle vandalism, including police report, mechanic's invoice/report, photographs of damaged ignition cylinder, or insurance claim.

50. I had no way to attend the hearing given these circumstances and the lack of proper notice.

THE ORDER OF PROTECTION IS VOID

51. Upon information and belief, the Michigan court entered an Order of Protection against me despite my lack of proper service and my written objections.

52. I believe this Order was entered without the court having personal jurisdiction over me.

53. An order entered without personal jurisdiction is void from the beginning (void ab initio) and has no legal effect.

54. I never had an opportunity to be heard in the Michigan proceedings because I was never properly served.

DEFENDANTS' USE OF THE VOID ORDER

55. Defendants know or should know that I was never properly served with the Order of Protection.

56. Defendants received my certified mailings stating I was not served.

57. Despite knowing the Order is void, Defendants continue to rely on it to prevent me from reclaiming Chief Wiggum.

58. Defendants intentionally ignored my demand letter in order to set a trap: if I attempt to reclaim my property, Defendants can claim I am "violating" the Order and have me arrested.

59. This is weaponization of the Order of Protection process to deprive me of my constitutional property rights.

IMMINENT THREAT OF ARREST

60. I face imminent threat of arrest based on the void Order of Protection.

61. Under the Full Faith and Credit Clause and the Violence Against Women Act, Illinois law enforcement agencies will enforce the Michigan Order of Protection as if it were an Illinois order.

62. Defendants may report me to the Chicago Police Department or Cook County Sheriff's Office at any time, claiming I have "violated" the Order by:
- Sending the demand letter;
- Filing this lawsuit;
- Attempting to contact them about Chief Wiggum; or
- Any other communication related to my property.

63. If Defendants report an alleged "violation," Illinois law enforcement will arrest me without examining whether the underlying Michigan Order is valid.

64. I could be arrested at any time—today, tomorrow, this week.

65. Arrest based on a void order would cause me severe harm:
- False imprisonment;
- A criminal record;

- Inability to pursue my property rights;
- Fear of exercising my First Amendment right to access courts;
- Trauma and exacerbation of my bipolar disorder.

66. I am making this emergency motion to prevent this imminent harm.

## THREAT TO CHIEF WIGGUM

67. Defendants operate Chubby Goat Acres as an animal rescue and adoption facility.

68. Defendants regularly adopt animals out to third parties.

69. Upon information and belief, Defendants may adopt Chief Wiggum out to a third party at any time.

70. If Chief Wiggum is adopted to a third party, I may never be able to recover him:
- The adopter may be in another state;
- The adopter may refuse to return Chief Wiggum;
- The adopter may claim rights as a "good faith purchaser";
- Chief Wiggum may be moved multiple times, making him impossible to locate.

71. Loss of Chief Wiggum would cause me irreparable harm:
- He is my Emotional Support Animal for my disability;
- We have a ten-year therapeutic bond that cannot be replaced;
- Loss of my ESA would severely exacerbate my bipolar disorder;
- No amount of money can compensate for this loss.

72. I am making this emergency motion to prevent Defendants from adopting Chief Wiggum out while this case is pending.

## NO ADEQUATE REMEDY AT LAW

73. I have no adequate remedy at law for these harms.

74. Money damages cannot compensate for:
- False arrest and imprisonment;
- Loss of my Emotional Support Animal;
- Ten years of bonding and therapeutic relationship;
- Exacerbation of my disability;
- Violation of my constitutional rights.

75. The Michigan state court has proven inadequate—it ignored my objections and proceeded without jurisdiction.

76. Only this federal Court can provide the relief I need to protect my constitutional rights and my property.

EFFORTS TO GIVE NOTICE

77. I am requesting that this Court issue the Temporary Restraining Order without prior notice to Defendants pursuant to Fed. R. Civ. P. 65(b)(1).

78. I am making this request because providing advance notice would result in immediate and irreparable harm:
a. If Defendants receive notice before the TRO is issued, they may immediately adopt Chief Wiggum out to a third party to frustrate this Court's jurisdiction and make recovery impossible;
b. If Defendants receive notice, they may immediately report me to Illinois law enforcement for alleged "violations" of the void Order, causing my arrest before this Court can rule; and
c. Defendants may destroy or conceal evidence, including records of my payments and the boarding agreement.

79. The harm that will occur if Defendants receive advance notice outweighs any prejudice to Defendants from proceeding without notice.

80. Defendants will have full opportunity to be heard at the preliminary injunction hearing scheduled within 14 days.

CERTIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 7, 2026 at Chicago, Illinois.

_____
Kenneth William Mayle
1034 N. Karlov Avenue
Chicago, Illinois 60651
248-635-7455
ken.mayle@gmail.com

LIST OF EXHIBITS:

Exhibit A: Demand letter dated December 22, 2025
Exhibit B: Certified mail receipt/tracking for demand letter
Exhibit C: Mailings to Michigan court challenging service
Exhibit D: Certified mail receipts/tracking for court mailings
Exhibit E: Evidence of weather conditions preventing travel
Exhibit F: Evidence of vehicle vandalism (police report, photos, etc.)